UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD SCHEXNAYDER (#359308)                      CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN                                      NO. 08-0294-FJP-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, this _____21st_____ day of September, 2009.

_____
DOCIA L. DALBY
MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD SCHEXNAYDER (#359308)             CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN             NO. 08-0294-FJP-DLD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Ronald Schexnayder, challenges his conviction and sentence of life imprisonment, entered in 1995 on one count of second degree murder. The petitioner contends (1) that the evidence was insufficient at trial to support his conviction, (2) that his trial counsel labored under a conflict of interest, (3) that his indictment was deficient because of systematic racial discrimination in the selection of grand jury foremen in Iberville Parish, and (4) that his attorney provided ineffective assistance at trial.

## PROCEDURAL HISTORY

This matter has a long and tortuous procedural history. The record reflects that the petitioner was tried by jury in July, 1995, and was found guilty of second degree murder, a violation of La. R.S. 14:30.1, in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana. The petitioner was thereafter sentenced on August 7, 1995, to life imprisonment, without the benefit of probation, parole or suspension of sentence. Approximately 2½ months later, on October 24, 1995, the petitioner filed an untimely Motion for Appeal in the state trial court, which motion was nonetheless "granted" on November 21, 1995. The state appellate court thereafter granted the petitioner extensions of time to file his appellate brief, which brief was filed on June 7, 1996. Notwithstanding, pursuant to subsequent determination of the First Circuit Court on October 7, 1996, the petitioner's appeal was ultimately dismissed as untimely pursuant to Louisiana Code

of Criminal Procedure art. 914, inasmuch as his original Motion for Appeal had been filed more than five (5) days after sentencing in contravention of that procedural rule. The appellate court further advised the petitioner, however, that he could "seek an out-of-time appeal by application for post conviction relief".

On November 25, 1996, the petitioner filed a Motion for Out of Time Appeal in the state trial court, which motion was granted on January 21, 1997. In his out-of-time appeal, the petitioner asserted the claims that the evidence was insufficient to support the verdict and that the trial court erred in excluding evidence of the victim's bad character. The appellate court thereafter affirmed the conviction and sentence on April 8, 1998, State v. Schexnayder, 708 So.2d 851 (La. App. 1st Cir. 1998), and a subsequent application for supervisory review in the Louisiana Supreme Court was denied on October 30, 1998, State v. Schexnayder, 723 So.2d 978 (La. 1998). Allowing for a 90-day period within which to file a writ of certiorari in the United States Supreme Court, which the petitioner did not do, the petitioner's conviction became final on or about January 28, 1999.[1]

On or about July 30, 1999, the petitioner filed an application for post-conviction relief in the state trial court, contending therein that his constitutional rights were violated by the systematic exclusion of African Americans from service as grand jury foremen in Iberville Parish, by the State's failure to disclose exculpatory evidence to the grand jury, and by the State's knowing presentation of false testimony before the grand and petit juries.[2] There is a reference in the record to this

---

[1] The United States Supreme Court recently held, in Jimenez v. Quarterman, ___ U.S. ___, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009), that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of s 2244(d)(1)(A) ..." and does not become final "... until the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking certiorari review of that appeal." Accordingly, although the petitioner's original Motion for Appeal was improperly filed and was ultimately dismissed in the state appellate court as "untimely", the petitioner was thereafter granted a motion for out-of-time appeal, and his conviction became final for purposes of timeliness review, therefore, only after denial of supervisory review thereof in the Louisiana Supreme Court and after the expiration of time for filing for discretionary review in the United States Supreme Court.

[2] It also appears from the record that the petitioner filed, on April 8, 1999, motions for new trial and/or reconsideration of his sentence, asserting that he was denied a fair trial based on

application having been denied by Order dated September 29, 2000, but a copy of the referenced Order is not included in the record, and although the petitioner filed a notice of intent to appeal from this Order, he was thereafter apparently allowed to supplement his original application in the trial court in January, 2001, with the additional claims that there was a conflict of interest between himself and his trial counsel, that there was sexual discrimination in the grand jury selection process in Iberville Parish, and that his trial counsel provided ineffective assistance at trial by failing to file a motion to quash the grand jury indictment. After evidentiary hearings conducted at long-separated intervals, in February, 2004, and November, 2006, respectively, the trial court finally denied the petitioner's application on December 13, 2006.

On or about January 11, 2007, the petitioner filed a pro se Notice of Intention to Apply to the Louisiana First Circuit Court of Appeal for Supervisory Writs. The subsequent writ applications were thereafter denied in the state appellate courts, with the intermediate appellate court denying same on April 18, 2007, and with the Louisiana Supreme Court denying same on March 7, 2008. See State ex rel. Ronald Schexnayder v. State, 977 So.2d 902 (La. 2008).

On May 12, 2008, the petitioner filed the instant habeas corpus application in this Court. The State asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that the petitioner's claims must be rejected.

## FACTUAL BACKGROUND

The evidence adduced at trial reflects that the petitioner was involved in three (3) separate and distinct confrontations with the victim on the evening of November 14, 1994. In the first, the petitioner was riding a bicycle borrowed from his cousin and encountered the victim at "Jackson's Store", located in St. Gabriel, Louisiana. At that time, the victim demanded the use of the bicycle,

---

a defective "reasonable doubt" jury instruction and based on racial and/or sexual discrimination in the grand jury selection process in Iberville Parish. It is unclear from the record, but these motions may have been incorporated into and became a part of the petitioner's post-conviction relief proceedings.

but the petitioner refused and left the area. Although confrontational words were exchanged between the parties at that time, there is no suggestion that either party was armed, that any threats were exchanged, or that any physical confrontation occurred. A short while later, while at home, the petitioner received a telephone call from his cousin who requested that the petitioner return the bicycle to him at Jackson's Store. Accordingly, the petitioner rode the bicycle back toward Jackson's Store but, on the way, encountered his cousin who indicated that the petitioner could keep the bicycle. The petitioner then proceeded to Jackson's Store where the victim was still located, and the victim again angrily demanded the bicycle, whereupon the petitioner again refused. At this point, the victim grabbed the handlebars of the bicycle and attempted to wrestle the bicycle away from the petitioner, but the petitioner retained control and again left the area on the bicycle. As the petitioner was riding away, the victim grabbed some loose rocks or gravel from the roadway and threw them at the petitioner. There is disputed evidence as to whether the petitioner was in fact struck by the rocks, but the petitioner testified that he was hit by same. In addition, two eyewitnesses testified that, as the petitioner rode away, he yelled out that he would return. Approximately 10 or 15 minutes later, the petitioner again returned to Jackson's Store on the bicycle, this time carrying a handgun. According to one eyewitness, the petitioner rode up to the victim, asked the victim, "what that was you said?", and without another word, fired 4 or 5 shots at the victim. According to this eyewitness, the victim made no threatening movements whatever toward the petitioner prior to the shooting. According to a second eyewitness, the petitioner rode up, asked the above-referenced question, and the two then began to argue. This eyewitness testified that, although the victim approached the petitioner during the argument, the victim was standing still and was not advancing on the petitioner at the time that the petitioner began shooting, was not making any threatening gestures, and had not made any movement as if to reach for a weapon. Both eyewitnesses testified that the petitioner shot directly at the victim and that they did not observe him shooting at the ground as he later testified.

The petitioner's testimony was essentially similar to that outlined above with respect to the first confrontation. With respect to the second confrontation, the petitioner's version is also similar, except that the petitioner testified (1) that at the time he returned to the store, his intent was to give the victim the bicycle as requested, but he changed his mind when the victim began arguing and cursing, (2) that during the subsequent confrontation over the handlebars, the victim physically pushed the petitioner and put his hands in the petitioner's face as they wrestled over the bike, and (3) that the petitioner never threatened to return as he rode away. Finally, with regard to the third confrontation, the petitioner testified that, after being struck by the gravel that was thrown by the victim, he returned to Jackson's Store, not to shoot the victim but because he feared that the victim would come looking for the bicycle, and he wanted to leave the bicycle somewhere other than at his home. He testified that he only obtained and brought a weapon to the third confrontation to scare the victim or to protect himself if a further altercation arose, and because he knew that the victim often carried a handgun himself. He also testified that he was scared of the victim, that he had seen the victim smoking marijuana earlier in the day, and that it was his impression that the victim was acting intoxicated and unstable. He testified that, as he approached the store, the victim came toward him in a hostile manner, and the petitioner then fired a warning shot into the ground. It was only when the victim continued to approach, refused demands to stop, and made a gesture as if to reach for a gun, that the petitioner fired an additional three or four shots, not intending to strike the victim but all pointed in a general downward direction. There is no question, however, that the victim was struck three times, once in the chest, once in the penis, and once in the back of the head. There was testimony from the examining physician that the fatal wound was the one to the back of the victim's head, that the bullet had to have come from behind or as the victim's head was turned away, and that the bullet had a downward trajectory as if the petitioner were standing over the victim or the victim was on the ground.

## LEGAL ANALYSIS

Turning to a substantive review of the petitioner's claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254. Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See also Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); Montoya v. Johnson, 226 F.3d 399 (5th Cir. 2000), cert. denied, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. Montoya, supra, 226 F.3d at 404. See also Williams v. Taylor, supra, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

Addressing first the petitioner's claim that the evidence was insufficient to support the verdict, the standard for testing the sufficiency of the evidence on federal habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Knox v. Butler, 884 F.2d 849, 851 (5th Cir. 1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990). This standard of review applies in both direct and circumstantial evidence cases. Schrader v. Whitley, 904 F.2d 282 (5th Cir.), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence. Knox, supra; Valles v. Lynaugh, 835 F.2d 126 (5th Cir. 1988); Holloway v. McElroy, 632 F.2d 605 (5th Cir. 1980), cert. denied, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. Knox, supra; Young v. Guste, 849 F.2d 970 (5th Cir. 1988). State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review. Hawkins v. Lynaugh, 844 F.2d 1132 (5th Cir.), cert. denied, 488 U.S. 900, 109 S.Ct. 247, 102 L.Ed.2d 236 (1988); Porretto v. Stalder, 834 F.2d 461 (5th Cir. 1987).

In the present case, the petitioner does not dispute that he pointed a handgun and fired four or five shots, three of which struck the decedent. Rather, the thrust of his argument is that there was insufficient evidence of his specific intent to kill or to commit great bodily harm. He contends that there was no evidence of prior "bad blood" between him and the victim or of any threats made by him against the victim. He further points to evidence that the victim pushed him and threw rocks at him during the second confrontation. Finally, he points to his own testimony at trial that he never

test-fired the gun and, so, did not fully know whether it would fire, that he brought the gun only to frighten the victim in the event of a further altercation, that he was afraid of the victim and believed the victim to be armed and under the influence of alcohol or drugs, and that he told the victim to back off as the victim approached and only fired into the ground when the victim continued to approach and made a threatening gesture. It is not this Court's function, however, to determine what the jury could have found if only it had believed the petitioner's self-service testimony and viewed the evidence differently. Instead, the Court's role is to determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to prove every element of the crime beyond a reasonable doubt. Further, in accordance with 28 U.S.C. § 2254(d), this Court is limited only to determining whether the Louisiana courts unreasonably applied the due process standards of Jackson v. Virginia, supra, in affirming the petitioner's conviction.

A determination of a factual issue shall be presumed correct, 28 U.S.C. § 2254(e)(1), and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. In light of this standard, the Court finds no unreasonable application of Jackson v. Virginia and the Due Process Clause. Viewing the evidence in the light most favorable to the prosecution, particularly the testimony of the two eyewitnesses to the incident, both of whom testified that the victim made no threatening gestures toward the petitioner and one of whom testified that the petitioner fired directly at the victim without warning or provocation, the jury could have believed, as found by the state appellate court on direct appeal, that the evidence was sufficient to find that the petitioner had the specific intent to kill or inflict great bodily harm as required for a verdict of guilty of second degree murder. Accordingly, based upon the foregoing, this Court is unable to conclude that the state court unreasonably applied the Due Process Clause and Jackson v. Virginia, supra, and the petitioner's application is without merit relative to this claim.

The petitioner next asserts that his constitutional rights were violated by the racially discriminatory method of selecting grand jury foremen in Iberville Parish, Louisiana. A

consideration of this claim, however, is procedurally barred in this Court. In this regard, it does not appear that the petitioner filed a motion to quash the grand jury indictment in the trial court, and the law is clear that a habeas petitioner's claim of racial discrimination in the selection of grand jury foremen in Louisiana is procedurally barred if the petitioner failed to file a pretrial motion to quash the indictment. Williams v. Cain, 125 F.3d 269 (5th Cir. 1997), cert. denied, 525 U.S. 859, 119 S.Ct. 144, 142 L.Ed.2d 116 (1998). See also Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); Deloch v. Whitley, 684 So.2d 349 (La. 1996).[3]

When a state court decision to deny post-conviction relief rests on a state procedural ground that is independent of the federal question raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's federal claims. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Moore v. Roberts, 83 F.3d 699 (5th Cir. 1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." Coleman, supra, 501 U.S. at 729-730, 111 S.Ct. at 2554. This rule applies even if the state court addresses the substance of the claim in the alternative. Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); Fisher v. State, 169 F.3d 295, 300 (5th Cir. 1999).

---

[3] Although this Court does not have before it the state court ruling on this issue or the transcript of the hearing at which this claim was argued, the Court is able to glean from the record that the state trial court surely relied on this procedural rule in denying the petitioner's claim of racial discrimination. Specifically, there is a handwritten notation on page 6 of the petitioner's application for post-conviction relief in the trial court, filed on or about July 30, 1999, wherein it is explicitly noted that there was, "no mtn to quash filed – so procedurally barred." This is a clear indication that the state trial court was aware of the need for a motion to quash to preserve this issue, of the absence of such a motion prior to trial, and accordingly, of the lack of merit to the petitioner's assertion in this regard. This conclusion is further borne out by the trial court transcript of December 13, 2006, at which time the trial judge noted his impression that the prior issues addressed by the court on post-conviction review (including this one), were "without merit".

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been, as here, explicitly based on a state procedural rule. Moore, supra, at 702; Sones v. Harbett, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." Id. The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law," or by demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, supra, 501 U.S. at 750, 111 S.Ct. at 2565; Moore, supra, at 702.

The petitioner has made no attempt to show that there exist the necessary cause and prejudice which would overcome the procedural bar. To establish "cause", the petitioner must show that some objective factor external to the defense prevented him from timely raising his claims in state court. See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992)(applying cause and prejudice standard in writ abuse case). To establish prejudice, the petitioner must prove "not merely that [asserted] errors ... create a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Neither "cause" nor "prejudice" is present in the instant case which would support this Court's disregard of his procedural default. Cf., McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Accordingly, the petitioner's assertion in this regard must be rejected.

Further, in the alternative, and notwithstanding the foregoing, it is clear that a substantive review of the petitioner's claim of racial discrimination would fail as well. In this regard, in order to establish a prima facie case of grand jury foreperson discrimination, the petitioner must show (1) that the population group in question is a recognizable, distinct class, singled out for different

treatment under the laws, as written or as applied, (2) the degree of under-representation, by comparing the population of the group in the total population to the population called to serve as grand jurors, over a significant period of time, and (3) a selection procedure that is susceptible of abuse or is not racially neutral. Castenada v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). See also Guice v. Fortenberry, 722 F.2d 276 (5th Cir. 1984); State v. James, 459 So.2d 1299 (La. App. 1st Cir. 1984), writ denied, 463 So.2d 600 (La. 1985), each of which utilized the three-part Castaneda test to evaluate a claim of racially discriminatory practices in the selection of grand jury foremen.

Both the United States Supreme Court and the Louisiana Supreme Court have previously acknowledged that the African American race is an identifiable group capable of being singled out for disparate treatment. See Rose v. Mitchell, supra; State v. Cosey, 779 So.2d 675 (La. 2000), cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001). It has also been recognized that, at the time that the petitioner was indicted, in 1995, Louisiana's procedure for selecting grand jury foremen was unquestionably subject to abuse according to subjective criteria that could include race and gender.[4] State v. Cosey, supra; State v. Langley, 813 So.2d 356 (La. 2002). Accordingly, it is undisputed that the first and third elements of the petitioner's prima facie case of grand jury discrimination are satisfied.

Nonetheless, the Court finds that the petitioner has failed to submit sufficient evidence demonstrating that African Americans were "substantially under-represented" as grand jury foremen over a significant period of time, i.e., the second element of his prima facie case. Louisiana courts of appeal have held that, in order to demonstrate "substantial under-representation" for purposes of a grand jury discrimination claim, the defendant must produce evidence showing that the percentage of minority persons in the general population who were

---

[4] That procedure, which is set forth in the pre-1999 version of La. Code Crim. P. art. 413, granted the judge the unilateral authority to select one member of the grand jury as the foreman, outside of the usual random selection procedures.

"qualified" to serve as grand jurors (i.e., the percentage of minority persons in the grand jury venire) was disproportionate to the number of minority grand jury foremen actually selected over a significant period of time. State v. Young, 569 So.2d 570 (La. App. 1st Cir. 1990), writ denied, 575 So.2d 386 (La. 1991); State v. Guillory, 715 So.2d 400 (La. App. 3rd Cir.), writ denied, 726 So.2d 17 (La. 1998); State v. Thibodeaux, 728 So.2d 416 (La. App. 3rd Cir. 1998), writ denied, 741 So.2d 27 (La. 1999), cert. denied, 528 U.S. 936, 120 S.Ct. 341, 145 L.Ed.2d 266 (1999).[5] The Louisiana Supreme Court has held, however, that in lieu of submitting evidence regarding the percentage of minority persons in the general population who were "qualified" to serve as grand jurors, a defendant may instead submit evidence regarding the percentage of minority persons who "actually served" on grand juries during a designated period of time (provided that such percentage was "statistically nearly identical" to the percentage of that minority in the gross population and among registered voters) and compare that percentage to the actual number of minority grand jury foremen selected over that period of time. See State v. Langley, supra.

In the present case, the only evidence which the petitioner apparently presented to the state trial court was the percentage of African Americans in the registered voter population in Iberville Parish in the year 2000 and the actual number of minority grand jury foremen selected in Iberville Parish between the years 1978 and 1992. Neither of these figures is particularly relevant to the other (with the percentage of registered African American voters in Iberville Parish for the year 2000 not being probative of such percentages between 1978 and 1992, the years for which proof was presented of the race of grand jury foremen), and neither of these figures is particularly relevant to the petitioner's grand jury indictment which was entered in 1995. Further, the evidence

---

[5] The reason a criminal defendant must submit evidence regarding the percentage of minority persons in the general population who were actually "qualified" to serve as grand jurors, rather than simply the percentage of minority persons in the general population who were registered to vote, is because not all registered voters are "qualified" under La. Code Crim. P. art. 401 to serve as grand jurors. In order to qualify as a grand juror under this statute, a Louisiana citizen must, inter alia, have been a parish resident for at least a year, have an ability to read and write the English language, have a lack of mental or physical infirmity, and not be a convicted felon or under indictment for a felony.

presented by the petitioner was moreover deficient because mere proof of the percentage in Iberville Parish of registered African American voters is not sufficient to demonstrate "substantial under-representation" in the absence of evidence of the percentage among such voters of those "qualified" to serve as grand jurors and/or evidence of the percentage of African Americans who "actually served" on grand juries during the relevant time period (provided, under Langley, that such "actual service" percentage was "statistically nearly identical" to the percentage of that minority in the gross population and among registered voters).  Since the petitioner failed to submit such evidence to the court for consideration, he failed to satisfy the second element of his prima facie case of grand jury discrimination.   On the showing made, therefore, the state court's denial of this claim was not contrary to, or an unreasonable application, of controlling law, and did not result from an unreasonable interpretation of the facts as presented to the court. See also Daley v. Cain, Civil Action No. 03-CV-0947-FJP-CN (M.D., La.)(wherein a habeas corpus claim arising in Iberville Parish was rejected on proof similar to that presented herein and wherein a Certificate of Appealability was thereafter denied by the United States Court of Appeals for the Fifth Circuit upon a finding that reasonable jurists would not find this conclusion "debatable").

Turning next to the petitioner's claim that he was denied due process because of a conflict of interest existing between himself and his attorney, the petitioner asserts that, unbeknownst to him, his attorney had previously provided legal representation to the victim and, at the time of the shooting, was representing the victim in connection with an unrelated indictment for second degree murder.  The petitioner's claim in this regard, however, is without merit. At an evidentiary hearing conducted in state court in connection with this issue, the petitioner's attorney testified that, at some time prior to his representation of the petitioner, perhaps a year or more earlier, he had met with the victim at the parish jail and conducted an initial interview relative to potential legal representation in connection with an unrelated murder indictment.  The attorney further testified, however, that he never undertook the representation of the victim and had no further contact with

him. The attorney further testified that, in retrospect, while he perhaps should have advised the petitioner of his prior contact with the victim, he did not do so because he did not believe that he had ever entered into an attorney-client relationship with the victim and so did not believe that any such notification was necessary. And in any event, it did not appear that there were any competing claims or defenses and certainly no divided loyalty. In fact, the attorney testified that his prior involvement with the victim operated ultimately in the petitioner's favor because the attorney utilized his knowledge of the victim's violent and dangerous past to mount a repeated and concerted effort to introduce evidence of the victim's bad character before the jury. Based on this testimony, this Court finds no error in the trial court's conclusion that there was no actual conflict of interest between the petitioner and his attorney.

Further, even were this Court to find that the petitioner's attorney acted improperly in connection with his representation of the petitioner and his prior "representation" of the victim, the petitioner must still satisfy the two-prong showing of deficient performance by his attorney at trial and actual prejudice resulting from such performance as mandated by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). Other than pointing out his attorney's failure to file a motion to quash the grand jury indictment, however, discussed infra, the petitioner makes no effort to establish the two prongs of the Strickland analysis. Instead, he presumably concludes that the situation which existed between himself and his attorney created an "actual conflict" which was of sufficient magnitude to create a presumption of prejudice, thereby bringing his claim within an exception to the general rule established by Strickland and obviating the need to establish prejudice resulting from his attorney's alleged misconduct. See Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). The Mickens Court, however, which addressed a situation strikingly similar to that alleged to have been presented herein, noted that only alleged conflicts of interest involving the active representation of conflicting interests have been found to support an avoidance

of the <u>Strickland</u> analysis and to compel a presumption of prejudice. The Court concluded, accordingly, that in the absence of a showing that his attorney actively represented conflicting interests, a habeas petitioner must establish both deficient performance and actual prejudice resulting from an alleged conflict of interest. <u>Mickens</u>, <u>supra</u>.

In the instant case, there is no showing of any conflicting interests and no showing of prejudice resulting from the alleged conflict. A review of the trial court record reflects a well-defended and hard-fought case which took place over a period of several days. The petitioner's attorney engaged in pretrial discovery, filed contradictory motions, conducted a vigorous voir dire examination of individual prospective jurors, and generally put forth an energetic opposition to the State's case. The evidence adduced at trial clearly reflected the petitioner to be the person who, after leaving the scene of a verbal confrontation, obtained a firearm and returned to the scene, and ultimately discharged the weapon in the direction of the unarmed victim, causing his death. There is nothing in the record or in the petitioner's argument which supports his contention that his attorney's representation was rendered ineffective by reason of the supposed conflict of interest between himself and his attorney or that the petitioner was materially prejudiced by such conflict. Accordingly, this claim must be rejected.

Finally, the petitioner asserts that his counsel was deficient for failing to file a pretrial motion to quash the grand jury indictment. In this regard, as previously noted, a habeas petitioner who claims ineffective assistance of counsel must affirmatively demonstrate:

    (1)    That his counsel's performance was "deficient", <u>i.e.</u>, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

    (2)    That the deficient performance prejudiced his defense, <u>i.e.</u>, that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

<u>Strickland v. Washington</u>, <u>supra</u>. The petitioner must make both showings in order to obtain habeas relief based upon this claim. <u>Id.</u> To satisfy the deficiency prong of the <u>Strickland</u> standard,

the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the petitioner satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989). To satisfy the prejudice prong of the Strickland test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Martin, supra, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case, he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." Id. at 816-17.

Applying the above standard to the petitioner's claim that his trial counsel was ineffective for failing to move to quash the grand jury indictment, it is clear that this claim is without merit. Even were the petitioner to prove successful in asserting that his counsel's performance was deficient in this regard, he is unquestionably unable to establish prejudice resulting from such deficiency. Given the strength of the evidence against him and the fact that he was found guilty

by a unanimous jury of twelve people, it is clear that a timely motion to quash would have done no more than delay the inevitable. See Merridith v. Cain, 2006 WL 2054446 (W.D. La. 6/29/2006). In other words, had the motion been made and granted at the trial court level, the petitioner would merely have been subjected to re-indictment by a properly convened grand jury, and there is no showing that the result would have been any different. See Pickney v. Cain, 337 F.3d 542 (5th Cir. 2003) ("[W]e have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment"."); Sepulvado v. Cain, 58 Fed.Appx. 595 (5th Cir.), cert. denied, 540 U.S. 842, 124 S.Ct. 110, 157 L.Ed.2d 76 (2003) ("Petitioner has not attempted to articulate how the foreman selection process (in connection with a grand jury that indicts on mere probable cause found by 9 of 12 members) worked to his actual prejudice when he was convicted by a lawfully chosen petit jury of twelve persons who unanimously found him guilty beyond a reasonable doubt"). Accordingly, there is no merit in the petitioner's assertion in this regard.

Based upon the foregoing, this Court concludes that the petitioner's application for habeas corpus relief in this Court is without merit and should be dismissed.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the petitioner's application for habeas corpus relief be dismissed, with prejudice.

Baton Rouge, Louisiana, this 21st day of September, 2009.

_____
DOCIA L. DALBY
MAGISTRATE JUDGE